**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**HAROLD D. YOUNG,**

           **Plaintiff,**

                                 **Case No. 2:25-cv-698**

     **vs.**                           **Judge Douglas R. Cole**

                                 **Magistrate Judge Elizabeth P. Deavers**

**CITY OF LOGAN,**
*et al.*,

           **Defendants.**

## INITIAL SCREEN REPORT AND RECOMMENDATION AND ORDER

       Plaintiff, Harold D. Young, an Ohio resident proceeding here *pro se*, was granted leave to proceed *in forma pauperis* by previous Order of the Court. (ECF No. 8.)

       This matter is now before the Undersigned to undertake the initial screen required by law to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2). Having completed the initial screen, the Undersigned **RECOMMENDS** that Plaintiff's claims be **DISMISSED** with the exception of Plaintiff's Fourth Amendment claim against Officer Arnett in his individual capacity arising from the alleged unreasonable seizure of Plaintiff's checks. Further, the Undersigned **RECOMMENDS** that the Emergency Motion for a Temporary Restraining Order and Preliminary Injunction to Prevent Anticipatory Retaliation (ECF No. 4) be **DENIED.** Finally, Plaintiff's Emergency Motion to Preserve Body-Worn Camera Footage (ECF No. 13) is **DENIED** and Plaintiff's

Motion by Pro Se Litigant to Obtain Electronic Case Filing Rights (ECF No. 14) is **DENIED without prejudice** at this juncture.

## I.

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).  To address this concern, Congress included subsection (e)[1] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
> \*      \*      \*
>
> (B) the action or appeal--
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31.  Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure

---

[1]Formerly 28 U.S.C. § 1915(d).

12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints."  *16630 Southfield Ltd*., *P'Ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."  *Flagstar Bank*, 727 F.3d at 504 (citations omitted).  Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'"  *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'"  *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

3

## II.

According to the Complaint, Plaintiff is bringing a civil rights action under 42 U.S.C. § 1983 for alleged violations of his Fourth and Fourteenth Amendment rights.  Plaintiff names as Defendants, the City of Logan and Officer Kyle Arnett of the City of Logan Police Department, in both his individual and official capacities.  The factual allegations are succinct and are restated here, verbatim, except for individual sentence numbering:

> On or around June 1st, 2025, Logan police officers responded to a trespassing complaint involving a third party named Jeramy Huckleberry, who was unlawfully present on Plaintiff's property.  During the incident, Mr. Huckleberry falsely accused the Plaintiff of possessing checks that allegedly belonged to him.  Plaintiff informed the officers that the checks in question were his own and offered to retrieve them from inside the home to show the officers.  Plaintiff returned with the checks, which contained his full name, banking information, account number, and routing number, in an effort to demonstrate that the property did not belong to Mr. Huckleberry.  Instead of properly safeguarding the Plaintiff's personal financial documents, one of the officers took the checks and placed them in his own pocket, offering no explanation or receipt.  On or about June 2, 2025, Plaintiff encountered Mr. Huckleberry again and discovered that he was in possession of the very checks that were given to the officer during the earlier encounter.  This act directly endangered Plaintiff's financial security and violated Plaintiff's constitutional right to privacy and property.  Upon information and belief, the officer(s) intentionally or negligently returned or gave Plaintiff's checks to Mr. Huckleberry, despite clear evidence that they contained Plaintiff's personal and financial information.  As a result of the officers' conduct, Plaintiff, risk of identity theft, emotional distress, and significant concern for the security of his financial accounts.

(ECF No. 1-1 at ¶¶ 6-14.)  Based on these allegations, in addition to his § 1983 claims, Plaintiff asserts State law claims for the intentional infliction of emotional distress and for a violation of Ohio Privacy and Identity Protection Laws, described by Plaintiff as "Ohio Revised Code § 1349.19, et seq. and relevant tort law."  (*Id.* at 4.)  By way of relief, Plaintiff seeks, *inter alia*, damages in the amount of $5,000.00, punitive damages, and declaratory and injunctive relief.

## III.

### A.  Plaintiff's § 1983 Claims

To prevail on a § 1983 claim, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). Here, Plaintiff claims deprivations of his Fourth and Fourteenth Amendment rights.  The Court takes Plaintiff's § 1983 claims against each Defendant in turn.

#### 1.  The City of Logan

Initially, despite identifying it as a Defendant, it is not entirely clear that Plaintiff directs his §1983 claims to the City of Logan.  For example, Plaintiff designates "COUNT I - Violation of Civil Rights under 42 U. S.C. § 1983" as "(Against Defendant Officers - Individual and Official Capacities)."  Nevertheless, later in his Complaint Plaintiff seeks injunctive relief against the "Logan Police Department."  (ECF No. 1-1 at ¶ D.)  "'[U]nder Ohio law, sheriff's and police departments are not entities capable of being sued under §1983.'"  *Wiltz v. Yost*, No. 2:24-CV-4000, 2025 WL 1685305, at *9 (S.D. Ohio June 16, 2025) (quoting *Lloyd v. City of Streetsboro*, No. 18-3485, 2018 WL 11298664, at *3 (6th Cir. Dec. 20, 2018)).  Accordingly, to the extent Plaintiff's § 1983 allegations implicate the "Logan Police Department," the Undersigned construes those allegations as directed to the City of Logan.  *See, e.g., Page v. Upshaw*, No. 24-10074, 2025 WL 1485343, at *3 (E.D. Mich. May 6, 2025), *report and recommendation adopted*, No. 24-CV-10074, 2025 WL 2166005 (E.D. Mich. July 30, 2025) (citation omitted) (finding that the City of Detroit Police Department is merely a creature of the City of Detroit and the City of Detroit would be the proper defendant).

5

Any § 1983 claims against the City of Logan, would be governed by *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  *Monell "*requires that, for liability to attach, a constitutional violation 'occurred because of a municipal policy or custom.'" *Westbrook v. City of Cincinnati*, 667 F. Supp. 3d 665, 670 (S.D. Ohio 2023) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).   To satisfy *Monell*, a Plaintiff can assert one of four things: "(1) the existence of an illegal official policy or enactment; (2) the existence of a policy of inadequate training or supervision; (3) the existence of a custom of tolerance or acquiescence to federal rights violations; or (4) that an official with final decision-making authority ratified the illegal actions." *Id.*

Here, Plaintiff makes no detailed allegations of any official policy, failure to train, a custom of tolerance or acquiescence to federal rights violations, or decision by a final policymaker that might give rise to a claim under *Monell*.  At most, Plaintiff seeks injunctive relief "to implement policies preventing further mishandling of citizen property."  (ECF No. 1-1 at ¶ D.)  More specifically he requests

> injunctive relief requiring the Logan Police Department to implement and enforce proper training procedures and oversight to ensure that personal, financial, and private property entrusted to officers during the course of official duties is not wrongfully shared, mishandled, or returned to third parties without lawful authority or verification.

(*Id*.)  Liberally construed, this request for relief suggests a possible failure to train or inadequate supervision theory of liability.  "To state a claim under a failure to train theory, the complaint must allege that a 'need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Martinez v. Wayne Cnty., Michigan*,

142 F.4th 828, 844 (6th Cir. 2025) (quoting *J.H. v. Williamson County*, 951 F.3d 709, 721 (6th Cir. 2020) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "Deliberate indifference requires 'proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Simpson v. City of Columbus*, No. 2:24-CV-4307, 2025 WL 1158081, at *3 (S.D. Ohio Apr. 21, 2025) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quotation omitted)). A plaintiff can meet this "stringent standard" in two ways, by alleging either (1) "evidence of prior instances of unconstitutional conduct demonstrating that the municipality had notice that the training was deficient and likely to cause injury but ignored it," or (2) "evidence of a single violation ... accompanied by a showing that the municipality had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Id.* (quoting *Okolo v. Metro Gov't of Nashville*, 892 F. Supp. 2d 931, 942 (M.D. Tenn. 2012) (quoting *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 562–63 (6th Cir. 2011))).

Even liberally construed, Plaintiff's indirect allegations here fail to meet this standard. At bottom, they fail to suggest deliberate indifference. This is so despite Plaintiff's conclusory use of the term "deliberate indifference" in his allegations relating to civil rights violations or his passing reference to "willful, wanton, and reckless misconduct" in his request for punitive damages. (ECF No. 1-1 at ¶¶ 18, B.) Significantly, Plaintiff has not cited any prior similar constitutional violations. Further, his limited allegations do not give rise to any plausible inference that the need for training or supervision to avoid the circumstances he has alleged was so obvious that any failure to provide either would have amounted to deliberate indifference.

Because Plaintiff makes only a bare request for "proper training, procedures, and oversight" with no specific facts related to the City of Logan's actual training or supervision, he

has failed to plausibly allege any failure to train or supervise by the City. Accordingly, Plaintiff has not stated a claim under § 1983 against the City of Logan.

### 2. Officer Arnett

Initially, Plaintiff does not make any factual allegations against Officer Arnett in the body of his Complaint. Instead, he repeatedly alleges the involvement of more than one officer in the events giving rise to his Complaint. (*See* ECF No. 1-1 at ¶¶ 6, 8, 10, 13, 14, 16, 17, and 19, repeatedly indicating the involvement of more than one officer.) It is a basic pleading requirement that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). "The United States Court of Appeals for the Sixth Circuit 'has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.'" *Jones v. Clark,* No. 2:24-CV-212, 2025 WL 353920, at *4 (W.D. Mich. Jan. 31, 2025) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).

Construing all allegations in the light most favorable to Plaintiff, however, he also states that "one of the officers took [his] checks." (ECF No. 1-1 at ¶ 10.) A reasonable inference from this allegation is that, as least as it relates to any claim arising from the alleged seizure of his checks, Plaintiff is referring to the conduct of Officer Arnett. This inference is supported by statements Plaintiff makes in his later-filed "Emergency Motion to Preserve Body-Worn Camera Footage," indicating that it was Officer Arnett who seized the checks. (ECF No. 13.) In light of Plaintiff's *pro se* status, the Undersigned declines to narrowly construe the allegations of the

8

Complaint so as to recommend dismissal of Plaintiff's claims against Officer Arnett on this basis.

Turning to the substance of Plaintiff's claims against Officer Arnett, Plaintiff seeks relief against this Defendant in both his official and individual capacities.  As for any official capacity claim against Officer Arnett, such a claim is "only another way of pleading an action against an entity of which an officer is an agent." *Monell,* 436 U.S. at 691.  Here, the Undersigned already has construed Plaintiff's § 1983 claims as also having been asserted against the City of Logan.  This makes any official capacity claim against Officer Arnett wholly duplicative and subject to dismissal.

As for Plaintiff's § 1983 claims against Officer Arnett in his individual capacity, at this stage in the proceedings, without the benefit of briefing by the parties to this action, the Undersigned concludes that Plaintiff may proceed with his Fourth Amendment claim against Officer Arnett based on the allegations that Officer Arnett unreasonably seized Plaintiff's personal checks.  This lone claim is deserving of further development and may proceed at this juncture.

Plaintiff's remaining § 1983 claims against Officer Arnett in his individual capacity should be dismissed.  For example, Plaintiff's allegations suggest his belief that, under the Fourth Amendment, he has a fundamental right to privacy in his financial affairs, including the banking information and the routing and account numbers appearing on his personal checks. (ECF No. 1-1 at ⊉ 16.)  On this point, he is mistaken.  The Sixth Circuit has rejected that proposition.  *Moore v. WesBanco Bank, Inc.,* 612 F. App'x 816, 822 (6th Cir. 2015) (citing *Overstreet v. Lexington–Fayette Urban Cnty. Gov't,* 305 F.3d 566, 575 (6th Cir. 2002)).  Further, as noted in *Moore,* the United States Supreme Court - in the Fourth Amendment context - has

recognized that "checks are not confidential communications but negotiable instruments to be used in commercial transactions." *Id.* (citing *United States v. Miller,* 425 U.S. 435, 442 (1976)). Accordingly, Plaintiff has no privacy interest in the financial information set forth on the checks themselves and has not stated any Fourth Amendment claim relying on that allegation.

As for Plaintiff's Fourteenth Amendment claim, whether he intends this to be a procedural due process claim or a substantive due process claim is not clear. To the extent Plaintiff's intention is the former, to succeed on such a claim Plaintiff "must show (1) the existence of a protected property interest at issue, (2) a deprivation of that protected property interest, and (3) that he or she was not afforded adequate procedures." *Paterek v. Vill. of Armada*, 801 F.3d 630, 649 (6th Cir. 2015) (citing *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir.2014)). Plaintiff's allegations that "one of the officer's took the checks and placed them in his own pocket, offering no explanation or receipt" suggest a random or unauthorized action. (ECF No. 1-1 at ¶ 10.) Merely alleging the deprivation of property under such circumstances, however, is insufficient to state a Fourteenth Amendment violation. *Jenkins v. Soc. Sec. Admin.,* No. 2:24-CV-4244, 2024 WL 5120020, at *2 (S.D. Ohio Dec. 16, 2024) (a plaintiff "deprived of property through a random and unauthorized act" of a government employee does not state a due process claim "merely by alleging the deprivation of property") (quoting *Darling v. Lake Cty. Bd. of Comm'rs*, No. 1:12CV194, 2012 WL 1902602, at *17 (N.D. Ohio May 25, 2012) (citing *River City Capital, L.P. v. Bd. of Cty. Com'rs, Clermont Cty., Ohio*, 491 F.3d 301, 306 (6th Cir. 2007))). "Rather, a plaintiff must also plead 'that state remedies for redressing the wrong are inadequate.'" *Id.* (quoting *Perdue v. Ohio Dep't of Corr.*, No. 1:13CV878, 2014 WL 661707, at *5 (S.D. Ohio Feb. 19, 2014)). Plaintiff makes no such allegations here. That is, he "does not provide 'any facts which indicate that the state post-

deprivation remedies are inadequate or unavailable to redress the wrong.'" *Id.* (quoting *Thompson v. Esham*, No. 1:15-cv-553, 2016 WL 692542, at *1 (S.D. Ohio Feb. 22, 2016)). Accordingly, Plaintiff has failed to assert a Fourteenth Amendment procedural due process claim.

The Fourteenth Amendment also protects against "governmental deprivations of life, liberty, or property ... regardless of the adequacy of the procedures employed." *Chambers v. Sanders*, 63 F.4th 1092, 1096 (6th Cir. 2023) (internal quotations and citations omitted). It protects enumerated rights and "those that are implicit in the concept of ordered liberty[ ] or the interest in freedom from government actions that shock the conscience." *King v. Sequatchie Cnty., Tennessee*, No. 1:21-CV-000055-DCLC-SKL, 2024 WL 4510547, at *5 (E.D. Tenn. Oct. 16, 2024), *appeal dismissed sub nom. King v. Sequatchie Cnty. Gov't*, No. 24-6035, 2025 WL 1398509 (6th Cir. May 5, 2025). Here, Plaintiff's limited factual allegations do not suggest any circumstances that would "shock the conscience." Moreover, to the extent Plaintiff's allegations implicate what "'has been coined an 'informational right to privacy,'" the Sixth Circuit has limited that right to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Miller v. Bronis*, No. 1:25-CV-830, 2025 WL 2383460, at *3 (W.D. Mich. Aug. 18, 2025) (quoting *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998); *J. P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981)). Importantly, as this Court has recognized, "[p]rivacy in financial records is not a right that is either fundamental or implicit in the concept of ordered liberty." *Moore v. Wesbanco Bank, Inc.,* No. 2:10-cv-514, 2013 WL 11821469, at *8 (S.D. Ohio Nov. 12, 2013), *aff'd,* 612 F. App'x 816 (6th Cir. 2015). Accordingly, Plaintiff has failed to assert a Fourteenth Amendment substantive due process claim.

**B. State Law Claims**

**1. Ohio Rev. Code § 1349.19**

Plaintiff, citing Ohio Rev. Code § 1349.19 and unidentified "relevant tort law" alleges that "[t]he unauthorized release of [his] private banking information violates Ohio law prohibiting the negligent dissemination of personal identifying information." (ECF No. 1-1 at ⸿ 21.) In Plaintiff's view, "Defendants had a "duty to reasonably secure personal data and safeguard private financial instruments" which they breached in their handling of the data Plaintiff "handed over in good faith during a police investigation." (*Id.* at ⸿ 22.) These allegations fail to state a claim under Ohio law.

Ohio Rev. Code § 1349.19 "imposes a disclosure obligation on a person who discovers that the security of a system containing certain personal information of Ohio residents has been breached." *Rebello v. Lender Processing Servs., Inc.,* 8th Dist. Cuyahoga No. 101764 2015-Ohio-1380, ¶¶ 33-34, 30 (April 9, 2015). "The disclosure is required only if 'unauthorized access and acquisition' of the personal information 'causes or reasonably is believed will cause a material risk of identity theft or other fraud.'" *Id.* That provision states, in relevant part:

> Any person that owns or licenses computerized data that includes personal information shall disclose any breach of the security of the system, following its discovery or notification of the breach of the security of the system, to any resident of this state whose personal information was, or reasonably is believed to have been, accessed and acquired by an unauthorized person if the access and acquisition by the unauthorized person causes or reasonably is believed will cause a material risk of identity theft or other fraud to the resident. * * *

*Id.; see also Short v. Ohio Dep't of Job & Fam. Servs.*, 10th Dist. Franklin No. 24AP-423, 2025-Ohio-2604, n.4 (July 24, 2025) (noting the statute's application to "any 'person that owns or licenses computerized data that includes personal information.'") Further, to the extent the

statute allows for a civil action, it authorizes only the attorney general to bring such an action "upon an alleged failure by a person to comply with the requirements of this section." Ohio Rev. Code Ann. § 1349.19(I) (West).

This claim warrants little discussion. Ohio Rev. Code § 1349.19 has no applicability to Plaintiff's allegations here. Moreover, the Undersigned does not find Plaintiff's generalized reference to "relevant tort law" as sufficient to raise any additional state-law claim. Accordingly, Plaintiff's claim under Ohio Rev. Code § 1349.19 should be dismissed.

### 2. Negligent Infliction of Emotional Distress

Finally, Plaintiff alleges the negligent infliction of emotional distress. More specifically he states that he "suffered mental anguish, anxiety, and distress resulting from the disclosure of his sensitive financial information" and was "foreseeably placed … at risk of fraud, identity theft, and financial harm, creating severe emotional distress." (ECF No. 1-1 at ¶¶ 19, 20.) These allegations do not support a claim for the negligent infliction of emotional distress under Ohio law.

"'To state a claim for negligent infliction of emotional distress under Ohio law, the plaintiff must allege that he was aware of real physical danger to himself or another.'" *Baker v. Lind,* No. 1:23-CV-321, 2023 WL 3791646, at *4 (S.D. Ohio June 2, 2023), *report and recommendation adopted,* No. 1:23-CV-321, 2023 WL 6161550 (S.D. Ohio Sept. 21, 2023) (quoting *Doe v. SexSearch.com*, 551 F.3d 412, 417 (6th Cir. 2008) (citing *Heiner v. Moretuzzo*, 652 N.E.2d 664, 669 (Ohio 1995); *King v. Bogner*, 624 N.E.2d 364, 367 (Ohio Ct. App. 1993))). "Under Ohio law, claims for negligent infliction of emotional distress are limited to instances where a plaintiff 'either witnessed or experienced a dangerous accident or appreciated the actual physical peril, and, as a result of this cognizance, suffered serious emotional distress.'" *Waseleski v. City of*

13

*Brooklyn,* No. 1:23-CV-00548, 2024 WL 1767279, at *11 (N.D. Ohio Apr. 24, 2024) (quoting

*Heiner*, 652 N.E.2d at 669). Thus, "'[a] complaint for negligent infliction of emotional distress

must allege that 'the plaintiff was placed in fear of physical consequences to his or her own

person.'" *Id.* (quoting *Snyder United States*, 590 F. App'x 505, 511–12 (6th Cir. 2014) (quoting

*Heiner*, 652 N.E.2d at 669); *see also Walkosky v. Valley Mem'ls*, 2001-Ohio-3386, 146 Ohio

App. 3d 149, 152, 765 N.E.2d 429, 432 (Ohio Ct. App. 2001) ("Concerning appellants' claim for

negligent infliction of emotional distress, this court has noted that an essential element is that the

distress is caused by the plaintiff's fear of an actual physical peril.")).

    Here, Plaintiff fails to allege anything approaching real physical danger to himself or another.

This failure is fatal to his claim alleging negligent infliction of emotional distress. Accordingly,

this claim should be dismissed.

## IV.

    Plaintiff also has filed a motion seeking a TRO claiming that he has "observed early

indicators of retaliatory intent" since the filing of this lawsuit. (ECF No. 4.) By way of example,

Plaintiff cites the "sudden involvement of Code Enforcement," "new warnings and scrutiny

directed at [his] residence," and "an uptick in passive monitoring near [his] home." (*Id.*) He

explains that "the intertwined nature of the Logan Police and Code Enforcement offices" support

his "credible fear that the situation will escalate into harassment, surveillance, or even physical

intimidation." (*Id.*) Plaintiff's motion should be denied for several reasons.

    First, any claimed injury in Plaintiff's TRO motion is not sufficiently related to the

conduct complained of in the Complaint, as detailed above. Instead, Plaintiff is alleging

retaliation after the filing of this action. "Plaintiff has 'no grounds to seek an injunction

pertaining to allegedly impermissible conduct not mentioned in his original complaint.'"

*Hairston v. Sparks*, No. 1:22-CV-104, 2022 WL 22854896, at *1 (S.D. Ohio Nov. 22, 2022)

(quoting *Colvin v. Caruso,* 605 F.3d 282, 300 (6th Cir. 2010) (quoting *Devose v. Herrington,* 42

F.3d 470, 471 (8th Cir.1994)) (declining to address merits of TRO motion where prisoner had

asserted forms of alleged retaliation for his lawsuit in his TRO motion which were distinct from

the retaliation alleged in his complaint).

Moreover, Plaintiff's TRO motion could not succeed on its merits.  Fed. R. Civ. P. 65

permits a party to a lawsuit to seek injunctive relief if he believes that he will suffer irreparable

harm or injury while the suit is pending. "A preliminary injunction is an extraordinary remedy

which should be granted only if the movant carries his or her burden of proving that the

circumstances clearly demand it." *Overstreet,* 305 F.3d 566, 573 (citing *Leary v. Daeschner*, 228

F.3d 729, 739 (6th Cir. 2000)).

 In determining whether to issue a preliminary injunction, this Court must balance the

following factors: !'(1) the movant's likelihood of success on the merits; (2) whether the movant

will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a

preliminary injunction would cause substantial harm to others; and (4) whether the public

interest would be served by issuance of a preliminary injunction."  *McNeilly v. Land*, 684 F.3d

611, 615 (6th Cir. 2012).  Courts balance these factors rather than treat them as "prerequisites

that must be satisfied." *Id.* (quotation omitted).  "The party seeking the preliminary injunction

bears the burden of justifying such relief."  *Id.*  The same four-factor analysis applies to a motion

for a TRO.  *Northeast Ohio Coal. for Homeless & Serv. Emps. Int'l Union v. Blackwell*, 467 F.3d

999, 1009 (6th Cir. 2006).

In his succinct motion, Plaintiff has not alleged facts sufficient to warrant a TRO. Notably, he fails to identify any specific Defendant in his Motion, instead generally referring to "the City of Logan, its law enforcement officers, code enforcement officials, and all affiliated agents." (ECF No. 4.) Assuming, however, that this catch-all language is intended to include Officer Arnett, Plaintiff has made no showing of the required strong or substantial likelihood of success on the merits of his action. Indeed, at this screening stage of the litigation, his likelihood of success on his claims is, at best, no greater than that of Officer Arnett's.

As for any claim of irreparable harm, Plaintiff offers primarily pure speculation. For example, in his initial Motion, Plaintiff identifies "foreseeable harms," including the "[c]hilling" of [his] First Amendment rights, including the right of access to the courts", "[i]rreparable psychological and emotional harm," "[d]isruption of judicial process and witness tampering," and "spoliation of evidence." (ECF No. 4.) Plaintiff offers absolutely no evidentiary support to demonstrate the potential for these harms. To be sure, as Plaintiff suggests, "[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). But, under the circumstances here, Plaintiff has not shown a likelihood of success on any such claim. Beyond this, broadly construing Plaintiff's additional submissions, while he claims he has been fined $100 and faces escalating fines, a jail sentence, or a lien on property, (ECF No. 15), he offers nothing to connect those alleged harms to any alleged wrongful conduct by Officer Arnett.

In short, on the merits, Plaintiff has not alleged facts sufficient to warrant a TRO. He has failed to present evidence showing either a substantial likelihood of success on the merits of his claims or demonstrating that he will suffer irreparable harm absent a TRO. These issues are dispositive, and the Undersigned need not consider the remaining factors. *Jones v. City of*

16

*Monroe*, 341 F.3d 474, 476 (6th Cir. 2003), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (en banc) ("[A] district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.").

## V.

This brings the Court to Plaintiff's two remaining motions, his Emergency Motion to Preserve Body-Worn Camera Footage and his Motion by Pro Se Litigant to Obtain Electronic Case Filing Rights. (ECF Nos. 13, 14.) Both of these Motions are **DENIED.**

In his Emergency Motion, Plaintiff asserts, without evidentiary support, that such an order is necessary because the destruction of alleged bodycam evidence is imminent. At best, Plaintiff appears to rely on Ohio Rev. Code § 2933.82 and unspecified "internal police policies" in support of this claim. By way of relief, Plaintiff requests an Order directing the "preservation of all BWC, dashcam, and related recordings from all Logan Police officers involved in the June 1st- June 2nd, 2025 incident," compelling "production of those recordings to Plaintiff within seven (7) days," and enjoining "Defendants from deleting, modifying, or concealing any relevant video of all Officers on scene on June 1st - June 2nd 2025 or documentary evidence in this matter." (ECF No. 13 at 2.)

At minimum this Motion is premature as discovery has not begun in this action. Moreover, "a party to civil litigation has a duty to preserve relevant information, including ESI, when that party "has notice that the evidence is relevant to litigation or ... should have known that the evidence may be relevant to future litigation." *John B. v. Goetz,* 531 F.3d 448, 459 (6th Cir. 2008). Thus, litigants are generally responsible for preserving relevant information on their own, making a request like Plaintiff's appropriate in only a very limited set of circumstances not

present here. *Id.* Indeed, Plaintiff's assertion of imminent destruction is mere conjecture and is not "premised on a demonstration that a real danger of evidence destruction exists." *Id.* Finally, Plaintiff's reliance on Ohio Rev. Code § 2933.82 is misplaced as that statute relates only to securing biological evidence.

As for Plaintiff's motion seeking electronic filing rights, "[g]enerally, '[p]arties proceeding pro se are not permitted to file electronically.'" *Newberry v. Cox Media Group, LLC,* No. 3:25-CV-00215, 2025 WL 2443080, at *1 (S.D. Ohio Aug. 25, 2025) (citing S.D. Ohio CM/ECF Procedures Guide, Section 1.1.). However, "[a] pro se individual may apply to the assigned Judicial Officer for permission to electronically file documents." *Id.*; *see also* S.D. Ohio Civ. R. 83.5(b) ("If the Court permits, a party to a pending proceeding who is not represented by an attorney may register as a Filing User solely for the purposes of that action."). Nevertheless, "the grant of electronic filing privileges is a *privilege* granted to pro se litigants in the discretion of this Court." *Needham v. Butler Cnty. Jail*, No. 1:19-cv-294, 2019 WL 5883643, at *2 (S.D. Ohio Nov. 12, 2019).

Here, Plaintiff has not demonstrated any need for such privileges or given any reason why they should be granted. (ECF No. 14.) Importantly, Plaintiff has not demonstrated any impediment to paper filing as evidenced by his many filings to date made by mail. Moreover, the Undersigned has concerns regarding Plaintiff use of the Court's efiling system given his recent decision to file documents that do not contain his original signature as a *pro se* litigant. (ECF Nos. 13, 15.) Accordingly, the Court determines that granting Plaintiff electronic filing privileges is unwarranted at this juncture. Plaintiff may renew this motion at a later time as circumstances may dictate. Further, Plaintiff is **SPECIFICALLY ADVISED** that Federal Rule of Civil Procedure 11(a) requires signature by an attorney or, if the party is not represented by an

18

attorney, Rule 11(a) requires signature by the party. Plaintiff is **DIRECTED** to re-file ECF Nos. 13 and 15 in proper form **WITHIN FOURTEEN DAYS OF THE DATE OF THIS ORDER.**

**V.**

For the reasons set forth above, it is **RECOMMENDED** that the Plaintiff's claims be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) with the exception of his Fourth Amendment claim against Officer Arnett in his individual capacity arising from the alleged unreasonable seizure of Plaintiff's checks. Further, it is **RECOMMENDED** that the Emergency Motion for a Temporary Restraining Order and Preliminary Injunction to Prevent Anticipatory Retaliation (ECF No. 4) be **DENIED.** Finally, Plaintiff's Emergency Motion to Preserve Body-Worn Camera Footage (ECF No. 13) is **DENIED** and Plaintiff's Motion by Pro Se Litigant to Obtain Electronic Case Filing Rights (ECF No. 14) is **DENIED without prejudice** at this juncture.

**PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert*

19

*v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

      **IT IS SO ORDERED.**

                                                      ***/s/ Elizabeth A. Preston Deavers***

**DATED:  August 28, 2025**             **ELIZABETH A. PRESTON DEAVERS**
                                                 **UNITED STATES MAGISTRATE JUDGE**